DUANE MORRIS LLP
Timothy T. Brock
230 Park Avenue, Suite 1130
New York, NY 10169-0079
Telephone: (212) 404-8781
Facsimile: (212) 818 9606
Email: TTBrock@duanemorris.com

*Counsel for the Joint Liquidators*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | : CHAPTER 15 |
| | : |
| GLOBAL STEEL HOLDINGS LIMITED, | : CASE NO. 23-10817 |
| | : |
| Debtor. | : |
| | : |

**VERIFIED PETITION UNDER CHAPTER 15 OF THE BANKRUPTCY
CODE FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING**

Craig Mitchell, Mark Wilson, and James Dowers, solely in their capacity as Joint

Liquidators (the "**Liquidators**[1]" or "**Petitioners**") of Global Steel Holdings Limited. ("**GSHL**"

or the "**Debtor**") in a foreign proceeding in the Isle of Man for liquidation (the "**Liquidation**" or

the "**Isle of Man Proceeding**") pursuant to the Companies Act 1931-2004 (the "**Act**") and the

Companies (Winding Up) Rules 1934 (the "**Rules**"), and through their undersigned counsel,

respectfully submit this Verified Petition, verified by the Declaration of Craig Mitchell, filed

herewith, seeking recognition of the Liquidation as a foreign main proceeding pursuant to

chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**") and themselves as

---

[1] Capitalized terms used but not defined shall have the meanings ascribed to such terms in the Background Fact
section.

authorized foreign representatives of the Debtor, and granting such further relief as may be appropriate.

Attached hereto as exhibits are (i) the Proposed Order Granting Recognition, Exhibit A; (ii) the Proposed Order Scheduling a Hearing on, and Specifying the Form and Manner of Service for, the Chapter 15 Petition, Exhibit B; and (iii) the Proposed Notice of Hearing for the Recognition of Foreign Main Proceeding, Exhibit C. In support thereof, the Liquidators respectfully state as follows:

## PRELIMINARY STATEMENT

1.     The Liquidators are charged with winding up the Debtor in the Isle of Man. The Debtor is a company organized under the laws of the Isle of Man. In furtherance of their duties, the Liquidators are investigating and pursuing certain assets, files, and records of the Debtor, and have undertaken certain ongoing actions in the United States with respect to those investigations and assets, files, and records as described hereinbelow. In order to investigate and pursue the assets, files, and records properly, to protect them, to obtain the benefits of the automatic stay, and to take appropriate action where necessary on behalf of the Debtor in the United States, the Liquidators seek recognition of the Debtor's Liquidation as a "foreign main proceeding,"[2] as it already has been so-recognized by an English Court (as defined and explained below).

2.     As set forth below, the Liquidation Orders, as that term is defined below,  and other documents filed contemporaneously herewith in support of the Petition show that (i) the Debtor was organized and operated in the Isle of Man and the Isle of Man Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code; and

---

[2] In the event the Court determines that the Isle of Man Proceeding is not a foreign main proceeding, the Liquidators reserve their right, in the alternative, to request this Court to recognize the Isle of Man Proceeding as a foreign non-main proceeding.

DM3\9657379.4

(ii) Petitioners are the "foreign representatives," within the meaning of section 101(24) of the Bankruptcy Code, authorized to, among other things, administer the liquidation of the Debtor's assets, and to act as representatives of the Isle of Man Proceeding.

3.      For years prior to the Liquidation, GSHL engaged professionals in the United States to assist them in investigating and recovering assets in various jurisdictions. The recent settlement of certain claims (the "**Settled Claims**") prosecuted by the U.S. law firm of King & Spalding, LLP ("**K&S**") on behalf of GSHL (through the Liquidators) and another entity in which GSHL is a shareholder, has resulted in substantial cash proceeds from that settlement passing through the United States before being remitted to the Liquidators. Certain cash proceeds from the Settled Claims (the "**Ringfenced Funds**" or the "**R-F Funds**") remain entrusted in escrow with K&S for subsequent transfer and/or distribution (as explained below).

4.      In connection with marshaling the Debtor's assets and administering the Isle of Man Proceeding, the Liquidators seek to continue their investigations and obtain certain files and records of the Debtor, and possibly to protect and recover assets in the United States. Petitioners request that the Court (i) recognize the Liquidation as a foreign main proceeding; (ii) recognize the Liquidators as the "foreign representatives" of the Debtor within the meaning of section 101(24) of the Bankruptcy Code; (iii) grant discovery relief to assist the Liquidators in connection with administration of the Isle of Man Proceeding; and (iv) grant the Liquidators the right to gather and administer any U.S. assets of the Debtor and to transfer any proceeds thereof to the Isle of Man Proceeding for their ultimate distribution therein.

## JURISDICTION AND VENUE

5.      This court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the "Amended Standing Order of Reference" of the United States District Court for the

Southern District of New York (C.J. Preska), dated January 31, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

6. The Debtor's known and undisputed assets in the United States include an undrawn retainer with the firm of the Liquidators' U.S. counsel in New York, New York. Other assets in the United States include rights to access certain files and records believed to be in the possession of U.S.-based professionals. *See* 11 U.S.C. § 109.

7. This case was properly commenced pursuant to 11 U.S.C. § 1504 by the filing of a petition for recognition of the Isle of Man Proceeding under 11 U.S.C. § 1515.

8. Venue is properly located in this District pursuant to 28 U.S.C. § 1410.

9. The statutory predicates for the relief requested include sections 1504, 1507, 1515, 1517, 1520 and 1521 of the Bankruptcy Code.

## STATEMENT OF FACTS

10. The Debtor is a private limited company incorporated and registered in the Isle of Man on January 25, 1994 with the name of Avondale Limited and company number 066279C. *See* Exh. D ("**Liquidation Orders**").

11. In 1996, the Debtor changed its name to Global Steel Holdings Limited. On March 8, 2018, it changed its name to Global Quantum Holdings Limited, before changing it back to Global Steel Holdings Limited on March 29, 2018, under which name it was liquidated. *See* id. Full details concerning GSHL's Isle of Man company filings can be obtained through this link: Online Services - Company Summary (gov.im)

12. The Debtor's registered office prior to its Liquidation was at 3 Auckland Terrace, Parliament Street, Ramsey IM8 1AF, Isle of Man. *See* id.

13. Since commencement of the Debtor's Liquidation in the Isle of Man (detailed below), the Debtor's registered office has remained in the Isle of Man, at the office of Joint

Liquidator Craig Mitchell, which is currently at CKM Consultants Limited, First Floor, Queen Victoria House, 41-43 Victoria Street, Douglas, Isle of Man IM1 2LF.

14.      GSHL's sole shareholder at the time of Liquidation was Direct Investment Limited ("**DIL**"), a company incorporated in the British Virgin Islands.

15.      GSHL's management at the time of Liquidation was as follows: Pramod Mittal ("**Mittal**") (director); Samuel Nwabuokei (director); Rajib Das (director); Vijay Kumar Singh (director); and, Arvind Singh (secretary).

16.      The Debtor operated as an investment and trading company involved in the steel industry, with investments in various steel production businesses around the globe, some of which were or are held in subsidiary companies in different jurisdictions, holding various investments related to its business. The Liquidators are not appointed over any parent or subsidiary companies.

*Ownership Interest in GINL*

17.      GSHL owns 8,950,000 shares in a Nigerian company called Global Infrastructure (Nigeria) Limited ("**GINL**"). The percentage of GSHL's shareholding in GINL is a matter of dispute between GSHL, GINL, and other asserted shareholders of GINL.

**Arbitration, Settled Claims and R-F Funds**

18.      GSHL and GINL recently completed the resolution of the Settled Claims, which comprised certain arbitral claims against the Federal Government of Nigeria (the "**FGN**").

19.      GSHL and GINL were jointly represented in respect of the Settled Claims by K&S.

20.     As a result of the Settled Claims, the FGN paid approximately $500 million to GSHL and GINL jointly.  Practically, those funds flowed from the FGN to K&S in the U.S., and then on to GSHL (and, the Liquidators presume, GINL).

21.     Some of the funds paid by the FGN, *i.e.*, the R-F Funds, remain held by K&S under certain escrow arrangements owing to the dispute as to GSHL's interests in GINL.  At present, those funds are held by K&S pending the resolution of those issues.

22.     These matters, including the resolution of the Settled Claims, the instruction of K&S, and the receipt of funds from the FGN, occurred under the supervision of, and with the specific sanction of, the Manx Court, as that term is defined below.

### GSHL's Creditors File for Wind-Up and Liquidation in Isle of Man

23.     The Liquidation commenced after one of the Debtor's major creditors, Moorgate Industries UK Limited ("**Moorgate**"), filed an application seeking the winding up of the Debtor with the High Court of Justice in the Isle of Man, Civil Division, Chancery Procedure (the "**Manx[3] Court**").  *See* Liquidation Orders (Exh. D).

24.     The Manx Court granted Moorgate's application and entered a provisional liquidation order (the "**Provisional Liquidation Order**") against the Debtor on May 10, 2018.  *See* id.

25.     In accordance with the Act and Rules, the Manx Court initially appointed as joint provisional liquidators Craig Mitchell (then of Isle of Man-based Browne Craine & Co. but currently of Isle of Man-based CKM Consultants Limited), and Deborah Janet King and Daniel

---

[3]  "Manx" when used as an adjective means of or relating to the Isle of Man or its people, language or culture.

Imison of AlixPartners LLP, UK-licensed insolvency practitioners (collectively, the "**JPLs**").
*See* id.

26.     Following an application by the JPLs on October 15, 2018, the Manx Court entered an order of liquidation (the "**Liquidation Order**") through which it appointed Adrian Allen and Mark Wilson, both of RSM UK Restructuring Advisory LLP ("**RSM**"), 25 Farringdon Street, London EC4A 4AB, as joint liquidators, replacing Ms. King and Mr. Imison, with effect from December 13, 2018.  *See* Exh D.

27.     In the Liquidation Order, the Manx Court reiterated that Craig Mitchell – formerly a JPL – would continue his work on behalf of the Debtor, now as a joint liquidator.

28.     On 31 March 2022, the Manx Court made an order whereby Mr. Allen was replaced by Mr. James Dowers (also of RSM).  As such, Mr. Dowers, Mr. Mitchell, and Mr. Wilson continue as the joint liquidators of GSHL.

29.     To date, the work of the Liquidators has consisted of establishing the background to the Debtor's affairs, its assets, and liabilities, investigating any possible claims which the Debtor may have, retaining and instructing U.S.-based and other professionals worldwide in investigations and legal proceedings to *inter alia*, recover assets for the estate, as well as files and records.

30.     At the time of its winding up, the Debtor had two major creditors: (i) Moorgate, an English company; and (ii) the State Trading Corporation of India Limited ("**STCI**"), an Indian state entity.  Both were owed many millions of dollars which, collectively, totaled several hundred million dollars.  Mittal personally guaranteed the Debtor's debts to both Moorgate and STCI.

DM3\9657379.4

31.     STCI subsequently withdrew its claim against the Debtor following a settlement which is said to have been effected by or on behalf of Mittal in India.

32.     While STCI was a creditor of the Debtor, it served on 'committee of inspection' which could approve certain of the Liquidators' decisions in place of the Manx Court.  However, following STCI's withdrawal of its claim, that committee of creditors is inquorate and inactive.

33.     As can be seen by the certified copies of the Provisional Liquidation Order and the Liquidation Order entered by the Manx Court and attached hereto, *see* Liquidation Orders (Exh. D), the Liquidation is a formal judicial procedure under the supervision and control of the Manx Court.

34.     The Liquidators have been officially appointed as joint liquidators and accepted their appointment pursuant to the Act, and filed their appointment (that is the Liquidation Orders) with the Companies Registry.[4]  *See* id.

35.     The Liquidation has been pending for almost five years, during which the Liquidators have conducted the Liquidation of the Debtor from the Isle of Man, where Mr. Mitchell is located, and the U.K., where Mr. Wilson and Mr. Dowers are located (and Mr. Allen was located prior to his retirement from office).  As noted above, the Liquidators also transferred the Debtor's registered office from its pre-Liquidation Isle of Man address to Mr. Mitchell's office address in the Isle of Man. Mr. Mitchell has filed (or caused to be filed) all required documentation in accordance with the Act and the Rules with the Companies Registry.  *See, e.g.,* Online Services - Company Summary (gov.im)

---

[4] *See* the Act located at, http://www.legislation.gov.im/cms/images/LEGISLATION/PRINCIPAL/1931/1931-0002/CompaniesAct1931_3.pdf

DM3\9657379.4

36.     Pursuant to the Act, the Liquidators took control of the Debtor from the previous directors. The Liquidators now have exclusive authority and act as the sole representatives of the Debtor. In that capacity, the Liquidators are the only parties who have any legal right to control all of the Debtor's assets and business, including but not limited to all bank accounts, if any, and all causes of action, files, records or other property of the Debtor. Although such assets remain in the Debtor's name, the Liquidators have sole authority to make decisions concerning them, subject, where applicable, to their need to obtain the sanction of the Manx Court.

37.     Creditors are required to file their claims with the Liquidators, who are charged with collecting and liquidating the assets, and resolving and paying all claims of creditors pursuant to the rules of Isle of Man law. *See e.g.*, n.4 the Act §§ 182, 184, 196, 202 and 247.

38.     Pursuant to these powers, the Liquidators also have extensive authority to seek assistance from and / or question under oath any party who may have relevant knowledge concerning the Debtor's business, particularly former directors, officers, employees, and obtain any and all files, records or other documents and information necessary to effectuate the Liquidation and associated investigations, including any of the foregoing located within the United States. *See e.g.*, n.4 the Act § 206.

39.     Moreover, pursuant to Section 196 of the Act:

> The [Manx Court] may, at any time after making a winding-up order, require any contributory for the time being on the list of contributories, and any trustee, receiver, banker, agent or officer of the company to pay, deliver, convey, surrender, or transfer forthwith, or within such time as the court directs, to the liquidator any money, property, or books and papers in his hands to which the company is *prima facie* entitled.

*See e.g.*, n.4 the Act § 196.

DM3\9657379.4

***U.K. Non-Main Proceeding Recognizes Manx Liquidation as Foreign Main Proceeding***

40.     There is one recognized foreign proceeding, other than the Liquidation, involving the Debtor, a "non-main" foreign proceeding now pending under the laws of England and Wales (the "**UK Proceeding**").

41.     The Liquidators commenced the UK Proceeding under Case No. CR-2019-002903 by filing a *Recognition Application* (the "**Recognition Application**") on April 29, 2019 with the High Court of Justice, Business and Property Courts of England and Wales (the "**UK Court**").  *See* Exh. E ("**UK Proceeding Materials**").

42.     In the Recognition Application, the Liquidators asserted to the UK Court that the Debtor has no place of business in Great Britain nor does it conduct business there.  *See* id.

43.     Similarly, the Debtor does not have an "establishment" in the United Kingdom, as defined by Chapter 15.

44.     The Liquidators commenced the UK Proceeding in order to investigate and prosecute claims that the Debtor may have as against third-parties, including its prior management, its shareholder, and its creditors.

45.     The UK Court held a hearing on the Liquidators' Recognition Application on May 24, 2019.  *See* id.

46.     On that same date, May 24, 2019, the UK Court granted the Recognition Application and recognized the Liquidation in the Isle of Man as a foreign "main" proceeding and the Liquidators as the Debtor's foreign representatives.  *See* id.

47.     Thus, the UK Proceeding has been pending for almost four years.

DM3\9657379.4

***The Liquidators Intend to File a Non-Main Foreign Proceeding in Singapore***

48.     The Liquidators may soon file for recognition in Singapore on a similar basis to that in the U.K. Proceeding and before this Court, *i.e.*, that the Liquidation in the Isle of Man is a foreign "main" proceeding and the Liquidators are the Debtor's foreign representatives.

## RELIEF REQUESTED

49.     The Liquidators seek entry of an order of this Court granting the following relief:

- Recognition of the Liquidators as "foreign representatives" within the meaning of section 101(24) of the Bankruptcy Code;

- Recognition of the Isle of Man Proceeding as a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code;

- All relief afforded to a foreign main proceeding automatically upon recognition pursuant to section 1520 of the Bankruptcy Code, including, but not limited to, the automatic stay pursuant to section 1520(a);

- Further additional relief as authorized by § 1521 of the Bankruptcy Code, including, without limitation:

  o staying the commencement or continuation of any action or proceeding (whether to pursue a lawful civil remedy or otherwise) concerning the assets, rights, obligations or liabilities of GSHL to the extent, if any, not stayed under section1520(a) of the Bankruptcy Code;

  o staying execution against the assets of GSHL to the extent, if any, not stayed under § 1520(a);

  o suspending the right to transfer, encumber or otherwise dispose of any assets of GSHL to the extent, if any, that this right has not been suspended under § 1520(a);

  o providing for the examination of witnesses, the taking of evidence, the production of documents, or the delivery of information concerning the assets, affairs, rights, obligations or liabilities of GSHL;

  o entrusting the administration or realization of all or part of the assets of GSHL within the territorial jurisdiction of the United States to the Petitioners;

  o otherwise granting comity to and giving full force and effect to the Liquidation; and

DM3\9657379.4

- Such other and further relief as may be necessary or appropriate at this time.

50.     The Liquidators are not seeking any provisional relief pursuant to section 1519 prior to a hearing on recognition of the Liquidation, and they reserve their rights to subsequently seek other forms of additional relief under section 1521 as circumstances may warrant.

## BASIS FOR RELIEF REQUESTED

51.     Chapter 15 of the Bankruptcy Code states that, unless manifestly contrary to the public policy of the United States, a court shall enter an order recognizing a foreign proceeding if:

(1)     such foreign proceeding for which recognition is sought is a foreign main proceeding or foreign non-main proceeding within the meaning of section 1502;

(2)     the foreign representative applying for recognition is a person or body; and

(3)     the petition meets the requirements of section 1515.

11 U.S.C. §1517(a).

52.     As set forth herein, the Liquidators satisfy the requirements for relief under section 1517 of the Bankruptcy Code, and thus this Court should grant recognition of the Isle of Man Proceeding.

### The Isle of Man Proceeding is a Foreign Main Proceeding

a.     ***The Isle of Man Proceeding Satisfies the Definition of a Foreign Proceeding***

53.     The Liquidation is a "foreign proceeding" pursuant to the Bankruptcy Code. The Bankruptcy Code defines a "foreign proceeding" as "a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation." 11 U.S.C. § 101(23).  Federal courts, including this Court, have held that

12

involuntary liquidations qualify as "foreign proceedings." *See In re Gerova Fin. Grp., Ltd.*, 482 B.R. 86, 95 (Bankr. S.D.N.Y. 2012) (recognizing an involuntary foreign main proceeding of an investment company in Bermuda instituted by only one creditor).

54.    The Liquidation is a "foreign proceeding" as it constitutes a collective judicial proceeding under the Act and the Rules—the applicable law of the Isle of Man—which laws relate to insolvency, in which assets of the Debtor are subject to control or supervision by the Manx Court. *See, e.g.,* 11 U.S.C. § 101(23).

55.    The Liquidators are treated as officers of the Court and governed by the Isle of Man administrative rules and regulations with regard to liquidations under the Act and the Rules. To that end, the Liquidators have the ability to make an application to the Manx Court for intervention if necessary, as does any interested party to the Liquidation. *See e.g.,* n.4, the Act, §§ 185 and 189.  The Liquidators can also be removed by the Manx Court (*see* id. at § 181) and/or fined for failure to comply with reporting guidelines (*see* id. at §§ 263 and 267).  In addition, pursuant to section. 184(1)(e) and (f) and 193 of the Act, the Liquidators must obtain approval from the Manx Court to enter into any settlements relating to the Debtor's assets.

56.    In fact, many substantive steps which the Liquidators may determine to take on behalf of the Debtor, outside of the ordinary course of business (which is fairly narrowly construed), would need to be with the "sanction," *i.e.*, the explicit approval or order, of the Manx Court.

57.    Throughout the course of the Liquidation, the Liquidators have in fact sought and obtained this sanction from the Manx Court in respect of the Liquidators' actions and investigations.  The process of obtaining this sanction involves the Liquidators explaining to the Manx Court what has occurred in the course of the Liquidation, what actions / steps are

proposed, and why those actions / steps are necessary and appropriate. It is then up to the Manx Court to approve (or not) the Liquidators' proposals.

58.     The Isle of Man Proceeding is "collective" in nature, as upon winding up, the Debtor's property shall be applied in satisfaction of its liabilities including, if possible, to pay any classes of creditors in full. *See e.g.*, n.4, the Act, §§ 184(1)(a), 195, 198, 205 and 247; *see also* id. at § 248 ("in winding up an insolvent company the same rules shall prevail and be overserved with regard to the respective rights of secured and unsecured creditors and to debts provable...."). The Liquidators have the authority to pay "any classes of creditors in full" and compromise with creditors to the extent necessary to resolve outstanding liabilities, debts, and/or claims and give complete discharge in respect thereof. *See* id. at §§ 184.

59.     The opportunity for any party to appeal or otherwise contest or rescind the Liquidation has long ago passed.

**b.      *The Isle of Man Proceeding Satisfies the Definition of a Foreign Main Proceeding***

60.     Not only is the Isle of Man Proceeding a foreign proceeding, it is also a foreign *main* proceeding within the meaning of section 1502(4) of the Bankruptcy Code. A "foreign main proceeding" means "a foreign proceeding pending in a country where the debtor has the center of its main interests." 11 U.S.C. §1502(4). "The relevant time period for determining COMI should be based on the Debtor's activities at or around the time [this] Chapter 15 Petition is filed . . . but a court may consider the period between the commencement of the foreign insolvency proceeding and the filing of the Chapter 15 petition to ensure that a debtor has not manipulated its COMI in bad faith." *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 137 (2d Cir. 2013).

DM3\9657379.4

61.     While the Bankruptcy Code does not define "center of main interests," ("**COMI**")
it does provide that, in the absence of evidence to the contrary, the debtor's registered office is
presumed to be the debtor's COMI. 11 U.S.C. § 1516(c). While here there is no such evidence to
the contrary, courts examining this issue have identified "[v]arious factors, singly or combined,
[that] could be relevant to such a determination" including: (a) the location of the debtor's
headquarters; (b) the location of those who actually manage the debtor; (c) the location of the
debtor's primary assets; (d) the location of the majority of the debtor's creditors or of a majority
of the creditors who would be affected by the case; and (e) the jurisdiction whose laws would
apply to most disputes. *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006), *aff'd*, 371
B.R. 10 (S.D.N.Y. 2007). *See also In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399 (Bankr.
S.D.N.Y. 2014) (recognizing a Chinese holding company COMI as the Cayman Islands, despite
no activity there prior to liquidation); *In re Ascot Fund Ltd.*, 603 B.R. 271 (Bankr. S.D.N.Y.
2019) (recognizing a Cayman investment fund COMI as Cayman Islands where only property in
U.S.)

62.     Here, the Isle of Man clearly is the center of the Debtor's main interests.  The
Debtor was incorporated in the Isle of Man.  The Debtor's registered office was in the Isle of
Man prior to the Liquidation.  The Debtor's statutory administration was on the Isle of Man and
it retained a local service provider to assist in this respect.  The Debtor also made its statutory
filings with the Companies Registry in the Isle of Man.  *See, e.g.,* Online Services - Company
Summary (gov.im)  Thus, the Isle of Man is presumed to be the Debtor's COMI.

63.     Moreover, the other factors considered by courts also support that the Isle of Man
is the COMI for the Debtor.

DM3\9657379.4

### c. *Other COMI Factors Demonstrate an Isle of Man COMI*

#### (1) *Location of the Debtor's Assets*

64.     The Debtor is a holding company and has no operations. The former directors of the Debtor have previously asserted that the Debtor was a trading company, although the Liquidators have not seen substantial primary evidence of this. Instead, it appears that the Debtor was primarily a holding company, and the latest accounts of the Debtor that are available to the Liquidators, for the year ending December 31, 2017, record substantial shareholdings in various subsidiaries

65.     It is the Joint Liquidators' belief that, even before the Liquidation, the Debtor submitted tax returns on the Isle of Man to the Isle of Man's tax authority.

66.     The Debtor's major liquid asset, the cash settlement proceeds referenced above (which passed through the Liquidators' counsels' accounts in the United States), is deposited in a Barclays Bank plc deposit account, established and maintained by the Liquidators on behalf of, and in the name of, the Debtor, in a branch of that bank located on the Isle of Man.

67.     The Debtor has deposited a retainer in the amount of $35,000 with its U.S. counsel, Duane Morris, through its New York, New York offices.

68.     The Debtor has no other known undisputed liquid assets.

69.     This factor strongly supports a finding that the Debtor's COMI is in the Isle of Man.

#### (2) *Location of the Debtor's Headquarters and Managers*

70.     The Liquidators (and the JPLs before them) have administered the affairs and assets of the Debtor since the commencement of the Liquidation in May 2018, almost five years ago, as set forth in detail above.

DM3\9657379.4

71.     The Liquidators have been administering the Liquidation in the Isle of Man for years.  The Liquidators have also: (i) retained legal counsel in the Isle of Man (Long & Co.) with whom they regularly consult, to assist the with the Liquidation; (ii) retained and instructed other legal counsel worldwide while under the supervision of the Manx Court; (iii) published notices in the Isle of Man as required; (iv) directed interested parties to contact Mr. Mitchell's office and/or Long & Co; (v) have communicated with certain of the Debtor's asserted creditors' (the "**Asserted Creditors**") Manx lawyers via Long & Co in the Isle of Man; (vi) have communicated with the Debtor's Committee of Inspection established by the Manx Court, at least while said committee was quorate and active; (vii) have communicated with the Isle of Man Companies Registry and filed any necessary paperwork required under Isle of Man liquidation laws; (viii) sought and obtained sanction from the Manx Court as explained above in respect of numerous matters connected to the Liquidation; (ix) sought and obtained injunctive anti-suit relief against the Asserted Creditors, from the Manx Court, restraining the Asserted Creditors from seeking to circumvent the jurisdiction of the Manx Court by filing abusive proceedings in other jurisdictions; and, (x) sought and obtained orders from the Manx Court entitling the Liquidators to operate a Manx bank account (contrary to the standard position which would require monies to be held in an account operated by the Manx Court).

72.     Mr Mitchell, one of the Liquidators, is an Isle of Man resident.

73.     As noted, Mr. Mitchell is a Director of CKM Consultants Limited, a Manx firm, and works out of that firm's office in the Isle of Man, where, as part of his duties, he administers the affairs and assets of the Debtor (with the assistance of his fellow Liquidators located in the United Kingdom).

74.     Under the Act and Rules, the Liquidators act collectively on behalf of the Debtor and are thus required to consult with each other and collectively make decisions regarding the Debtor and their administration of its assets and affairs.

75.     As a consequence, Mr. Mitchell is always involved, from his office and/or residence in the Isle of Man, in all significant decisions made by the Liquidators collectively on behalf of the Debtor.

76.     As already noted, to implement certain major steps in strategy concerning their administration of the Debtor, its assets and affairs, the Liquidators are required to obtain the sanction of the Manx Court, which supervises them and the Liquidation.

77.     It is the Liquidators' understanding that the Debtor had an operational presence in Dubai prior to the Liquidation.  The Liquidators have imperfect information about this Dubai presence, but they understand that it was (at least) materially reduced in 2013, some five (5) years before the Liquidation was commenced, when the Dubai Court ordered that the Debtor's local Dubai office be closed and sealed following local enforcement against the Debtor by a creditor.  The Liquidators understand that, after that office closure, the Debtor may have continued to operate from related companies' offices, but they understand that the Debtor's records were held in a storage warehouse, so it is unknown to the Liquidators how much, if any, 'substantive' operation was conducted from Dubai from 2013 onwards.

78.     The Debtor's directors pre-Liquidation were based in different locations all over the world, including in England, Dubai, Nigeria, and China; on that basis, to the extent that the Debtor's operational presence in Dubai ceased or reduced in 2013, it is not clear to the Liquidators to which jurisdiction(s), if any, this presence might have transferred.

DM3\9657379.4

79. The Liquidators were able to recover certain documents and records from Dubai; those are now accessible for review in the Isle of Man as well as to Mr. Mitchell's fellow Liquidators based in the United Kingdom.

80. The Liquidators submit that, under the facts and circumstances set forth above, the Debtor's headquarters and jurisdiction from which it has been managed has been in the Isle of Man since the Liquidation was commenced nearly five years ago in 2018, and therefore urge this Court to see these factors as compelling the conclusion that the Debtor's COMI has been in the Isle of Man since at least 2018.

### (3) *Substantive Law Applying to Disputes Concerning the Debtor*

81. Where its supervision by the Manx Court and administration by the Liquidators is concerned, the Liquidation is subject to Manx insolvency law, including the lodging of claims against the Debtor by the Asserted Creditors in the foreign proceeding.

82. Most of the pre-Liquidation contracts to which the Debtor was a party are governed by the laws of England and Wales due to relevant choice of law and venue provisions therein.

83. It is the Liquidators' understanding that the Debtor's contracts were generally subject to the laws of England and Wales due to a common interest with the various contractual counter-parties that such substantive law provisions would apply.

84. Post-Liquidation contracts to which the Liquidators are party pertain to professional services, and the laws of various jurisdictions (including England and Wales and New York) apply.

85. This factor supports a finding that the Debtor's COMI has been in the Isle of Man since at least 2018.

19

86.     As already noted, one of the Debtor's main creditors, Moorgate, is an English company.  The Debtor has a further minor creditor in Serbia.

87.     STCI, another of the Debtor's main creditors (at least until a settlement leading to the withdrawal of its claim), is a state-owned entity from India.

88.     The Asserted Creditors have appeared in the Liquidation who the Liquidators believe are affiliates or proxies of Mittal. Although the Liquidators have serious doubts about the soundness of these various affiliated claims, these claimants are located all over the world, notably including India, England, Mauritius, Singapore, China, the United Arab Emirates and the British Virgin Islands.

89.     As already noted, the claims filed against the Debtor in the Liquidation will be determined by the Manx Court from an Isle of Man perspective.

90.     This factor supports a finding that the Debtor's COMI has been in the Isle of Man since at least 2018.

91.     Based upon all of the foregoing, the Isle of Man is the "center of main interests" for the Debtor, and thus the Isle of Man Proceeding is a foreign "main" proceeding.

## The Liquidators are "Foreign Representatives"

92.     The Liquidators are persons who are the authorized foreign representatives of the Isle of Man Proceeding within the meaning of section 101(24) of the Bankruptcy Code. The Bankruptcy Code defines a "foreign representative" as "a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." 11 U.S.C. § 101(24).

93. Pursuant to the relevant provisions of the Act, the Liquidators are authorized to administer the Debtor's assets in accordance with the insolvency laws of the Isle of Man and to act as representatives of the Liquidation, which operates in favor of all the creditors and of all the contributories of the Debtor. Further, as stated, on the appointment of the Liquidators, the powers of the directors of the Debtor cease.

## The Chapter 15 Case Was Properly Commenced

94. Section 1515 of the Bankruptcy Code sets forth the process by which a foreign representative applies for recognition. It provides, in relevant part, that:

(a) A foreign representative applies to the court for recognition of a foreign proceeding in which the foreign representative has been appointed by filing a petition for recognition.

(b) A petition for recognition shall be accompanied by -

(1) A certified copy of the decision commencing such foreign proceeding and appointing the foreign representative.

(c) A petition for recognition shall also be accompanied by a statement identifying foreign proceedings with respect to the debtor that are known to the foreign representative.

11 U.S.C. § 1515.

95. As set forth above, the Liquidators meet the requirements of section 1515 of the Bankruptcy Code. The Liquidators have commenced this Chapter 15 case by filing a petition with this Court, and have submitted certified copies of the Liquidation Orders.

96. In addition, the Liquidators have submitted to the Court a statement identifying all foreign proceedings with respect to the Debtor that are known to the Liquidators, as required by Section 1515(c) of the Bankruptcy Code. Beyond the Liquidation itself, the only other foreign proceeding for the Debtor is the non-main U.K. Proceeding (although, as set forth in that statement, the Liquidators intend on filing a non-main foreign proceeding in Singapore).

DM3\9657379.4

97. Consequently, the Liquidators have satisfied all of the statutory requirements of section 1517 of the Bankruptcy Code to obtain recognition of the Isle of Man Proceeding.

98. In *Drawbridge Special Opportunities Fund LP v. Barnet (In re Barnet)*, 737 F.3d 238 (2d Cir. 2013), the United States Court of Appeals for the Second Circuit held that a foreign entity seeking recognition under Chapter 15 of the Bankruptcy Code must satisfy the requirements of section 109(a) of the Bankruptcy Code (*i.e.*, the foreign debtor must have "property" in the United States) in addition to satisfying the requirements for recognition set forth in section 1517 of the Bankruptcy Code.

99. Subsequent to the Second Circuit's decision, this Court has held that a foreign debtor has "property" in the United States where the foreign debtor has transferred funds to counsel in the United States as a retainer. *In re Globo Comunicacoes e Participacoes S.A.*, 317 B.R. 235, 249 (S.D.N.Y. 2004) (holding "property" consisted of a wholly owned Delaware corporation and an old bank account in the U.S.); *In re Octaviar Admin. Pty. Ltd.*, 511 B.R. 361, 373 (Bankr. S.D.N.Y. 2014) (debtor only had an undrawn $10,000 retainer with foreign representatives U.S. counsel in a U.S. bank). *See also In re Berau Capital Res. Pte Ltd*, 540 B.R. 80 (S.D.N.Y. 2015) (attorney retainer and debt indenture with New York choice of law and forum selection both were "property" to satisfy §109(a)).

100. The Debtor has an undrawn retainer with its U.S. counsel. Thus, section 109(a) of the Bankruptcy Code is not a bar to recognition of the Isle of Man Proceeding under Chapter 15.

## THE LIQUIDATORS' POTENTIAL NEED FOR DISCOVERY

101. Petitioners have commenced this Chapter 15 case in order to permit them to advance their investigation as part of the process of identifying, protecting and marshaling the assets (including claims) of the Debtor.

102.    If the Liquidators receive the additional relief they request on behalf of the Debtor pursuant to section 1521, in particular section 1521(a)(4), they will be able to obtain discovery from any parties in the United States possessing files, records, or other relevant information, which they can use in ascertaining the nature and value of the Debtor's assets and the existence of potential claims of the Debtor.

## THE LIQUIDATORS' NEED FOR THE ENTRUSTMENT POWER

103.    As noted, Petitioners have commenced this Chapter 15 case in order to protect and marshal any assets (including claims) of the Debtor in the United States, with the goal of transferring the proceeds of any such assets to the Isle of Man for ultimate distribution through the Liquidation.

104.    If the Liquidators receive the additional relief, they request on behalf of the Debtor pursuant to section 1521, in particular sections 1521(a)(5) and 1521(b), they will be able to marshal and administer any assets of the Debtor in the United States and ultimately transfer any proceeds of such assets to the Isle of Man for distribution through the Liquidation.

## HEARING DATE AND NOTICE

105.    Petitioners request that the Court set the date for a hearing, pursuant to § 1517(c) of the Bankruptcy Code, within either the weeks of June 19, 2023 or June 26, 2023 (the "**Hearing Date**").

106.    Petitioners propose that once a Hearing Date has been set by the Court, notice will be given by sending a *Notice of Filing and Hearing* (the "**Notice**"), in substantially the form annexed hereto as Exhibit C, with copies of this Verified Petition and its exhibits, the Mitchell Declaration, and the Long Declaration, to all persons and entities who are entitled to service, pursuant to Bankruptcy Rules 1011(b) and 2002(q), to: (a) the Office of the United States Trustee for the Southern District of New York; (b) all parties to litigations currently pending in

23

the United States to which the Debtors are a party, if any; (c) the Debtor; and (d) all persons or bodies authorized to administer foreign proceedings of the Debtor.

107.    Notice shall be sent by e-mail or first class mail to those parties with addresses within the United States and by e-mail or international courier or delivery service to those parties with addresses outside of the United States, so as to provide these parties with at least 21 days' notice of the Hearing Date, pursuant to Bankruptcy Rule 2002(q).

108.    Petitioners seek an Order of this Court, substantially in the form of the Proposed *Order Setting Hearing Date on the Application and Verified Petition for Recognition of Foreign Main Proceeding and Approving Notice Provisions*, annexed hereto as Exhibit B, finding that such notice and service is good and proper for all purposes and has been provided to all those entitled to such notice.

109.    The Liquidators believe that the foregoing notice is reasonable and proper under the circumstances and complies with Bankruptcy Rules 1011(b) and 2002(q).  In light of the nature of the relief requested, the Liquidators respectfully submit that no further notice is necessary.

## CONCLUSION

WHEREFORE, the Liquidators respectfully requests that this Court grant the relief requested herein, including recognizing the Liquidation as a "foreign main proceeding" under section 1517 of the Bankruptcy Code and certain limited additional relief under section 1521 of the Bankruptcy Code, enter the proposed order annexed hereto as Exhibit A, and grant such other relief as is just.

DM3\9657379.4

Dated: New York, New York
      May 23, 2023

**DUANE MORRIS LLP**


By:  /s/  Timothy T. Brock
      Timothy T. Brock, Esq.
      230 Park Avenue, Suite 1130
      New York, NY 10169-0079
      Telephone: (212) 404-8781
      Facsimile: (212) 818-9606

      *Counsel for the Joint Liquidators*

DM3\9657379.4